## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 25-cr-178-JDB** |
| **v.** | : | |
| | : | |
| **RONALD S. RICHARDSON,** | : | |
| | : | |
| **Defendant.** | : | |

### UNITED STATES' MEMORANDUM IN AID OF SENTENCING

The United States, by and through the undersigned counsel, respectfully submits this Memorandum in Aid of Sentencing for Ronald S. Richardson.  As described herein, pursuant to a plea agreement between the parties, the Defendant is being sentenced on one count of violating 18 U.S.C. § 922(g).  A review of the record and the Defendant's criminal history confirms that the Defendant's conduct here warrants incarceration.

### I.    SENTENCING GUIDELINES

#### Part A: The Guidelines Calculation for the Offense

In the plea agreement, the parties originally estimated and agreed that the Defendant's offense level was 14 and that after application of a two-point reduction for acceptance of responsibility, the Estimated Offense Level would be at least 12.  See Plea Agreement at ¶ 4(A)-(B) ECF 9.  Specifically, the parties estimated that the following is the Guidelines calculation:

| | | |
|---|---|---|
| U.S.S.G. § 2B1.1(a)(1) | Base Offense Level | 14 |
| | **Offense Level** | **14** |
| U.S.S.G. § 3E1.1(a) | Acceptance of responsibility | <u>-2</u> |
| | **Final Offense Level** | **12** |

**B.  Defendant's Criminal History Score**

The PSI calculated that the Defendant's prior convictions result in a criminal history score of five and that it placed the Defendant in Criminal History Category III.

**C.  Applicable Guideline Range**

The guideline range for a defendant with an offense level of 12 and a criminal history category of III is 15 to 21 months of incarceration.

**D.  United States' Recommendation**

The United States recommends, for the reason set forth below, that the Defendant be sentenced to a period of 15 months of incarceration.

**II.    THE 18 U.S.C. § 3553(a) FACTORS**

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines are no longer mandatory.  However, the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and "should be the starting point and the initial benchmark" in determining a defendant's sentence. *United States v. Gall*, 552 U.S. 38, 46, 49 (2007). Accordingly, this Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id.* at 49.

The Court should consider all the applicable factors set forth in 18 U.S.C. § 3553(a).  *Id.* at 49-50.  The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in § 3553(a).  *United States v. Rita*, 551 U.S. 338, 347-351 (2007).  The § 3553(a) factors include, *inter alia*: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for

the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to

provide just punishment for the offense, and to afford adequate deterrence to criminal conduct and

protect the public from further crimes of the defendant; (4) the need to avoid unwarranted sentence

disparities; and (5) the need to provide restitution to any victims of the offense. *See* 18 U.S.C.

§ 3553(a)(1)-(7).

### A.  The Nature and Circumstances of the Offenses and the Need for the Sentence to Reflect the Seriousness of the Offenses

On May 6, 2025, Officers with the Metropolitan Police Department were engaged in

Project THRIVE zones to establish police presence.  At approximately 4:17 P.M. near 1509 W St

SE, Washington DC 20020, the officers observed Ronald S. Richardson standing at a bus stop at

the intersection of 16 St SE and W St SE. When Richardson observed the officers, he abruptly

turned away and walked-up W Street.  Richardson was holding a wine bottle that did not appear

to be full.  The mini-wine bottle appeared to be just under half full of yellow in color liquid content.

his led the officers to conclude that Richardson was in possession of an open container of alcohol.

They exited the police vehicle at this point and began to place Richardson under arrest.  In a search

incident to arrest, the police recovered a handgun that was stored in the front portion of

Richardson's underwear.  It was a .380 caliber handgun, model Glock 42, with one round in the

chamber, and four additional rounds loaded in the inserted, six-round capacity magazine. The

firearm, upon inspection, appeared to be fully functional and operable, and able to expel projectiles

by means of explosive action, is capable of being fired using one hand, and has a barrel length of

less than 12 inches.   The police subsequently checked his criminal history and learned that the

Defendant had a conviction in Case Number 2022 CF2 004689.  The offense and the sentence

were punishable by a term of imprisonment exceeding one year.  Richardson waived his Miranda

rights and gave a statement to the police.  The Defendant stated that he possessed both the bottle of alcohol and the firearm.  The combination of an illegal firearm and alcohol is a recipe for disaster.

### B.  The Need to Promote Respect for the Law and to Deter the Defendant And Others from This Type of Criminal Conduct

A significant sentence of imprisonment here is necessary for both specific deterrence and general deterrence.  The United States realizes that the Court does not need to be reminded of the danger associated with illegally possessing a firearm.  Indeed, the Court's docket and the newspaper are replete with instances of what can happen.  More importantly, however, and as discussed in greater detail below, there a definite need for the Court to take steps to deter the Defendant from continuing this type of criminal activity.  Despite numerous arrest and convictions, the Defendant has yet to be dissuaded from engaging in criminal activity.

### C.  The History and Characteristics of the Defendant

 Unlike some defendants who come before the Court, this Defendant has had every opportunity to choose a different path.  The Defendant ignored those opportunities.  He is an adult who made a conscious, knowing and informed decision to violate the law.  It is time for the judicial system to treat him accordingly.

Despite having reasons in his life for becoming and remaining a law-abiding citizen, he chose to place himself, law enforcement and the community at risk.  He was waiting to board a bus -- while illegally armed and with an open bottle of alcohol -- and then proceed to a public restaurant.  The welfare of his family, those charged with protecting our community, and those who have the poor luck to be near him are of absolutely no concern to Defendant.

Instead of learning from his prior arrests and convictions, the Defendant made a

conscious and informed decision to repeat and escalate his criminal conduct. The Defendant's history makes it painfully clear that the Defendant had no regard for the law or other people in other community. In fairness, the United States does not possess information that the Defendant has committed a murder, robbed a bank or committed treason. The United States has irrefutable evidence that the Defendant is dedicated to a life of crime regardless of who he places in danger. Indeed, even while on release in the original Superior Court matter, the Defendant was arrested while driving without a permit and expired tags from another jurisdiction. So, despite eleven years of experience with the criminal justice system, the Defendant chose to stay on a criminal path in life.

The PSI reflects that the Defendant is a person does not obey the law, does poorly on pretrial release and probation, and simply does not learn. Or perhaps the Defendant has learned that his criminal never has serious ramifications for his liberty. The Defendant defies the law because he has never experienced the consequences.

The Defendant was nearly thirty years old at the time he illegally carried a firearm on the streets of D.C. There are also defendants who come before the Court seeking to justify criminal conduct because of a lack of options. This Defendant does not have even that argument. The Defendant was gainfully employed and has a family.

### D.  Unwarranted Sentencing Disparities

The District of Columbia Circuit has recognized that there will "inevitably . . . [be] sentencing disparities and inequities that can be explained by little more than the identities of the sentencing judges." *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008); *see also United States v. Saez*, 444 F.3d 15, 19 (1st Cir. 2006) ("[W]ith different judges sentencing two

defendants quite differently, there is no more reason to think that the first one was right than the second.").  The Guidelines "reduce unwarranted federal sentencing disparities," *Freeman v. United States*, 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." *Id.* at 533.  A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range." *Gall v. United States*, 552 U.S. 38, 54 (2007).  "[I]mposing a within-guidelines sentence is the surest way to avoid unwarranted disparities."  *United States v. White*, 737 F.3d 1121, 1145 (7th Cir. 2013).  The United States' recommendation is consistent with the recommendation in the PSI.

It is important to note that this matter was originally brought in Superior Court where the Defendant would have faced a mandatory minimum sentence of one year of incarceration.  While federal law provides this Court with more latitude with respect to sentencing, the Defendant should not be permitted to escape consequences yet again.  A sentence of 15 months is entirely consistent with similar sentences and does not create any disparities.

## III.    RESTITUTION AND FORFEITURE

### A.  Restitution

Restitution is mandatory under 18 U.S.C. § 3663A.  *See, e.g., United States v. Dickerson*, 370 F.3d 1330, 1335-36 (11th Cir. 2004) ("The MVRA obligates district courts to order restitution in certain cases, including wire fraud."); *United States v. Polichemi*, 219 F.3d 698, 707, 714 (7th Cir. 2000) ("[T]he court must follow the provisions of the Mandatory Victim Restitution Act of 1996 . . . because Olson was convicted of an offense of property [money laundering under § 1957]

as described in § 3663A(c)(1)(A)(ii).").  The United States is not aware of any restitution.

**SPECIAL CONDITIONS OF THE SENTENCE AND SUPERVISED RELEASE:**

The government agrees with the special conditions proposed by the United States Probation Office in the PSI.  *See* PSI at ¶¶ 106-113.  This includes a restitution obligation, financial disclosure, financial restrictions, employment restrictions, and substance abuse testing.  *Id.*

**CONCLUSION**

The United States respectfully submits that a sentence of 30 months of incarceration, three years of supervised release, and restitution and forfeiture as described herein is an appropriate and fair sentence considering the offense conduct, the need for specific and general deterrence, and the history and characteristics of the Defendant.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:    /s/ *Michael T. Truscott*
       MICHAEL T. TRUSCOTT
       D.C. Bar No. 1685577
       Assistant United States Attorney
       Fraud, Public Corruption, and Civil Rights
       Section
       601 D Street, NW, Room 5.1513
       Washington, DC 20530
       (202) 252-7223
       Michael.truscott2@usdoj.gov

7